COLLECTION AND INVESTIGATION BUREAU OF
MARYLAND, INC. *v.* GEORGE W. LINSLEY
ET AL.

[No. 1326, September Term, 1976.]

*Decided July 12, 1977.*

The cause was argued before GILBERT, C. J., and DAVIDSON
and MELVIN, JJ.

*Eugene A. Friedman* for appellant.

*Stephen E. Harris,* with whom were *Harris & Levine, P.A.* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

The English Parliament, enacted, during the reign of King Charles II,[1] legislation entitled, "An Act for Prevention of Frauds and Perjuries." That law, quickly became known by the stylistic name, "The Statute of Frauds."[2] In this, the tricentennial year of the Statute, an appellate court is called upon, for what appears to be the first time in the legal history of Maryland, to decide what is meant by the phrase "Space of one Year" as it appears in both the original and the present act.

By § IV of the Act it was provided in pertinent part:

"That from and after the said four and twentieth day of *June,* no Action shall be brought . . . (5) . . . upon any Agreement that is not to be performed within the Space of one Year from the Making thereof; (6) unless the Agreement upon which such Action shall be brought, or some *Memorandum* or Note thereof shall be in Writing, and signed by the Party to be charged therewith, or some other Person thereunto by him lawfully authorized."[3]

When the proprietary colony of Maryland, along with other English Colonies, declared its independence on July 4, 1776, the common law of England and English statutes then existent were carried over into what is now the sovereign State of Maryland.[4]

---

1. Charles II reigned from May 29, 1660 to February 6, 1688.
2. The citation to the statute is 29 Car. 2. Cap. 3. The abbreviation "Car." is from the Latin for Charles, "Caroli."

3. The act was passed in 1676 and became effective June 24, 1677. The name "Statute of Frauds" appears to be a misnomer, although Bacon, V.C. observed in Morgan v. Worthington 38 L. T. 443, 445 (1878), "That unfortunate statute, the misguided application of which has been the cause of so many frauds."

4. Constitution of Maryland, Declaration of Rights, Article 5.

Other provisions of § IV of the Statute have been lifted from that act and are now codified in various articles of the Maryland Code annotated, or as in the case of suits for breach of promise barred as a cause of action, unless the plaintiff is pregnant.[5]

The fifth proviso of § IV of 29 Car. 2, Cap. 3, is now set out as Md. Ann. Code art. 39C § 1 (3) in almost the identical wording of the 1676 statute. That section provides:

"No action may be brought:

\* \* \*

(3) Upon any agreement that is not to be performed within the space of one year from the making thereof;

Unless the contract or agreement upon which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged, or some other person lawfully authorized by him."

The instant appeal asks specifically whether an oral contract of employment as a Sales Representative for a period of one (1) year, conditioned upon a promise that on termination of employment the promisor would not compete in the same capacity in a similar business for a period of two (2) years violated the provision of Md. Ann. Code art. 39C § 1 (3).

The factual background from which this litigation arose is uncomplicated. George W. Linsley, one of the appellees, was employed by Collection and Investigation Bureau of Maryland, Inc., the appellant, in December, 1975 as a Sales Representative. According to appellant's Bill of Complaint filed in the Circuit Court for Baltimore County, the appellant is engaged in the business of "representing hospitals, physicians, dentists, other medical professionals, medical laboratories, other providers of medical care and commercial organizations in the collection of their

5. Md. Cts. & Jud. Proc. Code Ann. § 5-301 (a).

outstanding accounts." Obviously desirous of protecting its investment and safeguarding its list of customers from the prying eyes of competitors it exacted from Linsley an oral agreement. The agreement was, as we have said, that Linsley was employed for one (1) year and that upon termination of his employment he would not "for a period of two (2) years immediately following the termination of employment, . . . either directly or indirectly engage in a business or become employed by a company in the collection agency field that competes with . . . [appellant]." The employment could be ended by either the employer, appellant, or the employee, Linsley, "at anytime for any reason . . . with or without notice."

Linsley tendered his resignation to the appellant on May 3, 1976, effective that same date and promptly became a Sales Representative of Liberty Collections, Inc., (Liberty) another appellee, and a competitor of appellant.

On May 27, 1976, slightly over three (3) weeks after Linsley ended his employment with appellant and went to work for Liberty, appellant filed a bill of complaint in the circuit court against Linsley,[6] Liberty and the third appellee, Larry Asner, who is described in the bill as "the President and one of the principals who controls and manages the business of Liberty. . . ." Appellant sought to enjoin Linsley's employment with a competitor, Asner's and Liberty's employment of Linsley, and "damages for the losses sustained as well as attorney's fees and costs." A "Show Cause Order" was issued, and it together with the bill and process was served on the appellees. Within the time specified in the "Show Cause Order", the appellees filed demurrers to the bill. Liberty and Asner, in a joint demurrer asserted that the agreement upon which the action was brought was violative of "the Statute of Frauds", Md. Ann. Code art. 39C §1 (3).[7] Linsley demurred for the same reason.

---

**6.** The bill recites that Linsley "failed to return all the client lists, directories and prospective client cards . . . [belonging to the appellant] and is soliciting the present and prospective clients of . . . [appellant] as well as disclosing confidential information . . . [about appellant] to his employer [Liberty]."

**7.** The demurrer of Liberty and Asner recited the additional grounds that no cause of action was set-out against Liberty and Asner. Inasmuch as

Judge Walter A. Haile, after reviewing the authorities, sustained the demurrers without leave to amend.

Appellant promptly noted an appeal to this Court. Here, appellant claims that "the oral covenant not to compete for two years upon termination of employment ancillary to a one year oral personal service agreement is not within the Statute of Frauds."

The general rule is that a negative contract for personal forbearance imposes only a personal liability on the promisor and is fully performed by his refraining from doing the act during his lifetime. When the promise is for an indefinite period such as for the life of the promisor, it is not within the ambit of the Statute of Frauds because, life being itself indefinite and uncertain, the promisor may die within the space of one year. So too, with promises based upon contingencies which may become actualities within a one year time frame. *See Nickell v. Johnson,* 162 Ky. 520, 172 S. W. 938 (1915); *Sauser v. Kearney,* 147 Iowa 335, 126 N. W. 322 (1910); *Hall v. Soloman,* 61 Conn. 476, 23 A. 876 (1892); *Doyle v. Dixon,* 97 Mass. 208, 93 Am. Dec. 80 (1867). Under such circumstances the mere fact of forbearance coupled with the promisor's death during the year, ". . . constitutes a full performance of the contract, and any stipulations in the contract looking beyond the year depend entirely on the contingency of the promisor's life." 72 Am. Jur. 2d *Statute of Frauds* § 30.

Brantly on Contracts § 59 (2d Ed. 1912) states that, "(b) The statute does not apply if the contract can by any possibility be completed within a year, although the parties may have intended that its operation should extend through a much longer period and in fact it does so extend." (Footnote omitted). *See also Home News v. Goodman,* 182 Md. 585, 35 A. 2d 442 (1944); *Neal v. Parker,* 98 Md. 254, 57 A. 213 (1904); *Cole v. Singerly,* 60 Md. 348 (1883); *Ellicott v. Peterson,* 4 Md. 476 (1853).

Brantly goes on to declare, "(c) The statute does not apply

---

the case turned, in the trial court, on the Statute of Frauds that issue was not reached.

if the death of one party within the year would leave the contract fully performed and its purpose achieved. Therefore an agreement not to engage in a certain business for five years is not within this clause, because the death of the promisor within a year would leave the contract fully carried out." (Footnote omitted). To the same effect *see Doyle v. Dixon, supra.*

The *Brantly - Doyle* view is not in keeping with the majority of jurisdictions [8] nor with either Professor Williston's, *"A Treatise on the Law of Contracts,* or Professor Corbin's, *"A Comprehensive Treatise on the Rules of Contract Law".*

3 Williston on Contracts § 497 (3rd Ed. 1960) is ·critical of the *Brantly-Doyle* non-application of the statute. Williston makes clear that the fact that the promisor might expire within the space of a year is not a fulfillment or completion of the contract but rather a determination that the contract would be performed since the promisor, after death, could not break the negative promise. In short, the promisee would know that the promisor, being dead, could not, irrespective of his lifetime intent, so act as to defeat the contract. Nevertheless, the contract would not be fully performed but would, by virtue of the death of the promisor, be terminated.

Professor Corbin puts it in a slightly different way. He suggests that the test to be applied to conditional promises, such as in the case *sub judice,* is: "If the promisor should die within a year, would the promised performance be wholly completed in accordance with the terms of the agreement, or would the legal duty of the promisor be terminated and the

---

8. Massion v. Mt. Sinai Cong., 40 Wyo. 297, 276 P. 930 (1929); Collas v. Brown, 211 Ala. 443, 100 So. 769 (1924); Shapiro v. Balaban, 205 N.Y.S. 208, 210 App. Div. 47 (1924); Kindervater v. Till, 155 Wis. 585, 145 N. W. 214 (1914); McGirr v. Campbell, 75 N.Y.S. 571, 71 App. Div. 83 (1902); Higgins v. Gager, 65 Ark. 604, 47 S. W. 848 (1898); Lee's Adm'r. v. Hill, 87 Va. 497, 12 S. E. 1052 (1891); Haynes v. Mason, 30 Ill. App. 85 (1889); Mallett v. Lewis, 61 Miss. 105 (1883); Gottschalk v. Witter, 25 Oh. St. 76 (1874); Day v. N.Y. Cent. R.R. Co., 51 N. Y. 583 (1873); William Butcher Steel Works v. Atkinson, 68 Ill. 421, 18 Am. Rep. 560 (1873); Williams v. Bemis, 108 Mass. 91, 11 Am. Rep. 318 (1871); Self v. Cordell, 45 Mo. 345 (1869). *Accord;* Restatement of Contracts, § 198 Illustration 4 (1932); Wm. L. Clark, Handbook of the Law of Contracts § 44 (4th Ed. 1931).

promised performance at the same time remain uncompleted?"

Appellant argues that it is illogical for courts to hold that an oral contract for life is without the statute of frauds and thus enforceable and at the same time to insist that an oral contract for thirteen months violates the statute and is unenforceable. Admittedly there is a certain superficial appeal in such a contention. It is superficial because it overlooks the working of the statute and its primary purpose. The words of the act provide that it is applicable to oral contracts that cannot be performed within one year. Its purpose was to prevent fraud upon a party by a subsequent disavowal or breaking of the faith symbolized by the hand shake. We surmise that the Parliament of 1676 believed that important agreements, those of longer than a one (1) year duration should be put in writing so as to remove, insofar as possible, the opportunity to avoid performance by denying the existence of the contract. In any event it seems to us to be obvious that a contract for life is most indefinite. Life itself does not enjoy the certainty of its counterpart, death. While actuarial tables indicate the normal life expectancy they are no more than averages. Death may come at any time to any one either by accident, self infliction or so called natural causes. Death is no respecter of averages. Because of the constant possibility of death, the courts, not possessed of divine wisdom, are unable to declare that a promisor to a contract will live for any definite period of time. For that reason oral contracts for life, being as we have said, indefinite, are not within the proscription of the statute of frauds.

On the other hand, an oral contract for a thirteen month term is definite and certain. Thirteen months cannot lapse in a one year period. So that a thirteen month contract, or as in the case before us, a two year contract is unmistakably within the scope of the statute for the reason that it cannot be performed within the space of one year.

In order to reach the result that appellant urges upon us, we would have to construe the word "performed" as used in the act to mean "terminated" or "rescinded" or "cancelled"

or some other word short of performance but constituting an excusal of performance. To achieve that result we would not only have to rewrite the dictionary meaning of the word "performed" we would also have to rewrite the statute. We shall do neither.

Instead, we align ourselves with the view of the majority of our sister States [9] that there is a distinction between termination and performance. When we apply the Corbin test to the factual situation in the instant case, it is at once apparent that had Linsley died within one year after resigning from the appellant's employment the covenant not to compete would have been terminated as a result of that death, but the contract would not have been completed, i.e. fully performed, because one can not refrain from engaging in a competitive business for two years within one year.

Whatever period of forbearance remained would still be there. Performance would, of course, be completed by the subsequent passage of time, but the promisee, aware that death seals the lips as well as stays the heart, in the interim, could rest absolutely assured that the promisor's faithful performance was guaranteed.

We think the covenant not to compete in the case now before us violates Md. Ann. Code art. 39C, § 1 (3), and that Judge Haile properly sustained the demurrers of the appellees.

> *Order sustaining demurrers without*
> *leave to amend affirmed.*
> *Costs to be paid by appellant.*

---

9. *See* n. 8 *supra*