729 P.2d 1068

**A. Daniel FRANTZ, Plaintiff-Appellant,**

**v.**

**David L. PARKE and René Parke, husband and wife, Defendants-Respondents.**

**No. 15777.**

Court of Appeals of Idaho.

Nov. 5, 1986.

Rehearing Withdrawn Dec. 30, 1986.

James H. Paulsen, Sandpoint, for plaintiff-appellant.

Stephen F. Smith, Sandpoint, for defendants-respondents.

BURNETT, Judge.

Should an unwritten covenant not to compete be enforced? That is the central issue in this case. The issue has been raised by a chiropractor who sued to enforce an unwritten agreement purportedly barring competition for a period of five years. In a summary judgment, the district court held that such an agreement would violate Idaho's one-year statute of frauds. We affirm.

We are asked to decide whether a possibility of death within one year takes the alleged agreement outside the statute of frauds; whether the statute is obviated by full or part performance of the agreement; and whether the defendant is equitably estopped to invoke the statute under the circumstances of this case. We also must determine whether a cause of action lies in tort, rather than in contract, for the impact of competition upon the plaintiff's practice.

The plaintiff, A. Daniel Frantz, maintains an office for chiropractic healing at Sandpoint, Idaho. From 1974 until May 1, 1982, he practiced alone. On the latter date another chiropractor, David L. Parke, became associated with Frantz. Parke moved to Sandpoint from Washington, and accepted employment for an indefinite term, pursuant to an oral agreement. The parties now dispute whether the agreement contained a covenant not to compete. Frantz asserts that it did and that the covenant prohibited competition for five years at any location within fifty miles of Sandpoint. He further claims that the covenant was an integral part of the employment agreement; he never would have hired Parke without it. In contrast, Parke contends that he had been aggrieved by a prior noncompetition covenant in Washington and that he never would have gone to work at Sandpoint if Frantz had insisted upon such a covenant. Because this appeal arises from a summary judgment, we will presume the facts urged by Frantz to be correct.

After nine months of practicing with Frantz, Parke discontinued the relationship. He opened his own practice in Sandpoint. Frantz sued to enjoin Parke and to recover damages. After a hearing, the district court denied Frantz's motion for a preliminary injunction. Parke then moved for summary judgment. The motion was granted and this appeal followed.

## I

We turn first to the statute of frauds. The earliest such statute was enacted by the English Parliament in the year 1676, during the reign of King Charles II. Formally titled "An Act for Prevention of Frauds and Perjuries," the law came to be known as the "Statute of Frauds." It provided in part that "no Action shall be brought ... upon any Agreement that is not to be performed within the Space of one Year from the making thereof ... unless the Agreement ... or some Memorandum or Note thereof shall be in Writing, and signed by the Party to be charged therewith...." 29 Car. 2, Cap. 3, *cited in Collection and Investigation Bureau of Maryland, Inc. v. Linsley,* 37 Md.App. 66, 375 A.2d 47 (1977). After the American colonies won their independence from the Crown, many new states adopted their own versions of the statute of frauds.

Idaho is no exception. Today, I.C. § 9–505 echoes its early English ancestor. The statute provides, in pertinent part, as follows:

> In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:
>
> 1. An agreement that by its terms is not to be performed within a year from the making thereof.

It is at once clear that a five-year covenant, as alleged by Frantz, could not "by its terms ... be performed within a year." The covenant appears to fall squarely within the statute.[1]

### A

Frantz urges that the covenant can be reconciled with the statute because it might be "performed" by death of a party within one year. The courts are divided on whether death of a promisor constitutes full performance of a covenant. Some decisions have adopted the position advocated by Frantz. *See Hubbard v. Logsdon,* 56 Ill. App.3d 366, 14 Ill.Dec. 296, 372 N.E.2d 101 (1978); *Doyle v. Dixon,* 97 Mass. 208 (1867). The RESTATEMENT (SECOND) OF CONTRACTS (1970), at § 130 comment b, states that "[d]ischarge by death of the promisor may be equivalent of performance in the case of a promise to forbear, such as a contract not to compete."

However, the greater weight of authority holds that a contract not to compete would be "terminated," not fully "performed," by death of the promisor. *E.g., Collection and Investigation Bureau of Maryland, Inc. v. Linsley, supra. See also Higgins v. Gager,* 65 Ark. 604, 47 S.W. 848 (1898); *Griffith v. One Investment Plaza Associates,* 62 Md.App. 1, 488 A.2d 182 (1985); *Worwa v. Solz Enterprises, Inc.,* 307 Minn. 490, 238 N.W.2d 628 (1976); *Shapiro v. Balaban,* 210 A.D. 47, 205 N.Y.S. 208 (1924); *McGirr v. Campbell,* 71 A.D. 83, 75 N.Y.S. 571 (1902); *Kindervater v. Till,* 155 Wis. 585, 145 N.W. 214 (1914). In his seminal treatise, Professor Williston endorsed the majority view. In the event of death, he explained, "the contract would not be fully performed.... [I]t would

1. The covenant is no less subject to the statute of frauds merely because it is alleged to be part of a larger employment agreement. Indeed, in cases like this one, where provisions within and without the statute are inseparable, the entire contract is unenforceable. *See Hornady v. Plaza Realty Co.,* 437 So.2d 591 (Ala.Civ.App.1983); *accord Kindervater v. Till,* 155 Wis. 585, 145 N.W. 214 (1914). In this case, no issue has been raised concerning enforcement of provisions other than the covenant. Parke has terminated his employment and Frantz has asserted no continuing entitlement or desire to retain Parke's services.

merely have become certain that the contract would be performed since the promisor being dead could no longer break a negative promise; but no one can refrain from competition for two years within a year." 3 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 497 (W. Jaeger, 3d Ed.1960) (hereinafter "WILLISTON"). *Accord* J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 19–18 (2d ed. 1977) (hereinafter "CALAMARI & PERILLO").

In Idaho we have construed our statute of frauds narrowly. We have allowed enforcement of an oral contract made for an indefinite period, to be determined by a stated future event, if it was possible—albeit unlikely—that the stated event could occur within a year. *Whitlock v. Haney Seed Co.,* 110 Idaho 347, 715 P.2d 1017 (Ct.App.1986) (agreement to employ plaintiff so long as factory remained in operation). *See also Darknell v. Coeur d'Alene & St. Joe Transportation Co.,* 18 Idaho 61, 108 P. 536 (1910) (agreement to employ plaintiff so long as he owned company stock). Similarly, in *Hubbard v. Ball,* 59 Idaho 78, 81 P.2d 73 (1938) our Supreme Court upheld an oral agreement to provide services for an indefinite period until the death of the person served.

However, in the present case, the covenant is not for an indefinite term. It is for a discrete term of five years. It contains no reference to death. Of course, death would terminate the contract; but our Supreme Court has ruled that the mere possibility of cancellation within a year does not take a contract with a definite term outside the statute of frauds. *Seder v. Grand Lodge of Ancient Order of United Workmen of North Dakota,* 35 Idaho 277, 206 P. 1052 (1922). We see no logical reason to treat differently a mere possibility of termination by death within a year. Indeed, if the unstated but omnipresent possibility of death could take an agreement for a definite term outside the statute of frauds, it would eviscerate the statute in virtually all contracts for definite terms between mortals. Accordingly, we subscribe to the majority view and hold that possible termination by death does not remove the five-year covenant in this case from the statute of frauds.

B

We next turn to the doctrines of full and part performance. Both doctrines are said to take an agreement out of the statute of frauds. Counsel have furnished us cases from jurisdictions throughout the country, illustrating the circumstances in which these doctrines have, or have not, been applied. We find that confusion abounds regarding the terminology and content of each doctrine. The cases are replete with ad hoc, result-oriented applications. We believe a clearer conceptual approach can be derived from Idaho authorities.

The problem of terminology is vexing. In some cases the phrase "full" performance has been used to denote performance by both parties of all obligations under a bilateral contract. In other cases it appears to mean performance by one party of all his obligations. "Part" performance sometimes overlaps with the latter version of "full" performance. It also may signify performance by either or both parties of less than all their respective obligations under a contract. These variations of meaning may contribute to the impression that authorities on full and part performance are in hopeless disarray.

When we use the term "full" performance, without qualification, we mean performance of all obligations by both sides to a contract. It is universally recognized that the statute of frauds is inapplicable to a contract fully performed by both sides. WILLISTON § 528, at 727–28. Idaho's statute, by its own terms, governs contracts "to be performed...." Moreover, the object of the statute is to prevent potential fraud by forbidding disputed assertions of enumerated kinds of contracts without any written basis. This purpose is fully satisfied when the parties themselves accept the contract and mutually perform it. For the same reason, the statute of frauds is inapplicable when a contract, al-

though not fully performed by both sides, is mutually acknowledged to exist. 2A. CORBIN ON CONTRACTS § 430 (Supp.); *see, e.g., Boesiger v. Freer,* 85 Idaho 551, 381 P.2d 802 (1963). In the present case, obviously, there is no such mutual acknowledgement or full performance of the covenant on both sides. Rather, Frantz contends that he has substantially performed and that Parke has not performed at all.

We turn to "part" performance. When we use this term, we mean performance by either or both parties of less than all their respective obligations under the contract. There is no literal foundation in I.C. § 9–505 for the oft-made assertion that part performance takes a contract outside the statute. Plainly it does not. The contract is still within the statute. At least a portion of the contract remains "to be performed" on both sides. *Compare* I.C. § 9–504 (explicitly referring to part performance of land sale contracts under I.C. § 9–503). Rather, it is more accurate to say that in some circumstances, part performance may establish an equitable ground to avoid the strictures of the statute of frauds.

In *Allen v. Moyle,* 84 Idaho 18, 367 P.2d 579 (1961), discussing contracts for personal services, our Supreme Court implicitly recognized this point:

> [T]he equitable doctrine of part performance is not applicable to a contract ... within the statute of frauds.... The mere part performance of such a contract does not take it out of the operation of the statute or permit a recovery under the contract for any part of the contract remaining executory.... [T]o hold that part performance is performance would be a nullification of the statute.

*Id.* at 23, 367 P.2d at 582 (*quoting* 49 AM.JUR. § 497, at 798). Similarly, in *International Business Machines Corp. v. Lawhorn,* 106 Idaho 194, 198, 677 P.2d 507, 511 (Ct.App.1984), we referred to part performance as a doctrine "grounded in equity." The doctrine of part performance is best understood as a specific form of the more general principle of equitable estoppel. Accordingly, we will return to it in the next section of this opinion.

Hovering uneasily between full performance by both parties and part performance by either or both parties is a troublesome hybrid known as "full" performance by one party. American courts and commentators have long disagreed—with varying degrees of awareness and perception—as to whether such performance is akin to full performance by both sides (taking a contract outside the statute of frauds) or more closely resembles part performance (possibly allowing equitable relief from the statute). A majority of courts appear to hold the former view. CALAMARI & PERILLO § 19–23; CORBIN § 457; L. SIMPSON, HANDBOOK OF THE LAW OF CONTRACTS § 89 (2d ed. 1965) (hereinafter SIMPSON); 73 AM.JUR.2D *Statute of Frauds* § 533 (1974) (hereinafter *Statute of Frauds*). However, "no ... general principle can be derived from the decisions on this point." WILLISTON § 528. Thus, some courts have held that the statute of frauds does not apply to a contract fully executed on one side, where nothing remains to be done on the other side except to pay money. *See* SIMPSON § 89. Courts adopting this view may order the contract to be enforced in damages. Other courts, taking an approach analogous to part performance, may consider an equitable or quasi-contractual remedy, such as quantum meruit. *Id.*

Although the Idaho courts have not explicitly addressed this issue, our cases strongly point to the equity approach. The Idaho Supreme Court repeatedly has held that when one party has fully performed an oral contract within the statute of frauds, he is not entitled to collect damages for a breach. Rather, he is entitled to the equitable remedy of specific performance. *E.g., Tew v. Manwaring,* 94 Idaho 50, 480 P.2d 896 (1971); *Quayle v. Mackert,* 92 Idaho 563, 447 P.2d 679 (1968).

These cases put Idaho among a minority of states, but we think the equity approach is sound. It offers greater consistency with the literal language of Ida-

ho's statute of frauds. For even if one side has fully performed a contract, the contract as a whole remains "to be performed." Moreover, it is the nonperforming party who seeks protection under the statute. Conceptually, it makes little sense to allow the extent of the opposing party's performance to determine whether the contract is within or without the statute. It makes greater sense, in our view, to examine the conduct of both parties, and the circumstances surrounding the alleged contract, to determine whether the party invoking the statute of frauds is equitably entitled to do so. Accordingly, we hold that the doctrine of full performance by one party, like the doctrine of part performance, does not take the contract out of the statute of frauds. Rather, it should be treated as a form of equitable estoppel.[2] We now turn to the estoppel question.

C

The elements of equitable estoppel are set out in *Tew v. Manwaring, supra.*

> [With respect to the party estopped] the essential elements of equitable estoppel are:
>
> * * * * (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

94 Idaho at 53, 480 P.2d at 899. *See also Charpentier v. Welch,* 74 Idaho 242, 259 P.2d 814 (1953). These elements may be satisfied in a statute of frauds case when one party orally has made a false promise and the promisee has relied specifically upon it, changing position to his detriment. *Boesiger v. Freer,* 85 Idaho 551, 381 P.2d 802 (1963). Estoppel in such a case does not vary the statute of frauds but simply bars the promisor from raising it as a defense.

Here, the district judge ruled that Parke was not estopped to invoke the statute. He found that Frantz had failed to establish two of the foregoing elements—a representation that was false when made, and subsequent detrimental reliance by Frantz. We agree with the judge on both points. However, we deem it appropriate to expand upon the latter. Frantz asserts that he relied upon Parke's promise not to compete and that he changed his position in reliance on the promise by (1) furnishing employment; (2) advertising Parke's presence in the practice; (3) referring patients to Parke; and (4) investing money in remodeling and refurbishing an office for Parke's use. These actions constituted Frantz's participation in the overall employment arrangement. The question is whether they also constituted the kind of reliance necessary to obtain equitable relief from the statute of frauds.

In *International Business Machines Corp. v. Lawhorn,* 106 Idaho 194, 198, 677 P.2d 507, 511 (Ct.App.1984), we noted that equitable relief is available to a party "who demonstrates reliance upon an oral contract by acts that would not have been done except for the contract. However, such reliance cannot be established by conduct referable to a cause other than the oral contract." In *Bob Daniels and Sons v. Weaver,* 106 Idaho 535, 542, 681 P.2d 1010, 1017 (Ct.App.1984), we added that any performance in reliance on an oral

2. Our holding obviates a potentially nettlesome problem that may arise if differing statutory consequences are ascribed to part performance and full performance. The problem is to determine where "part" ends and "full" begins. The proper category is not always clear. In some cases, like this one, the party seeking to avoid the statute may claim that his performance fits both categories.

agreement "may not be referable to another cause, such as the rights and duties provided by a separate written agreement." Our Supreme Court also has recognized that acts of reliance must be referable to the oral contract. In *Anderson v. Whipple,* 71 Idaho 112, 127, 227 P.2d 351, 358 (1951), the Court refused to estop application of the statute of frauds to an oral promise to transfer land occupied by the promisees. The Court said that the promisees' improvements to the land were "not more than good husbandry would require." Because the improvements were ascribable to ordinary caretaking by the occupants, they did not constitute reliance on the alleged oral promise. In contrast, in a case where substantial improvements were made, evidencing an oral agreement and demonstrating detrimental reliance on it, the Court upheld equitable relief against the statute of frauds. *Roundy v. Waner,* 98 Idaho 625, 570 P.2d 862 (1977). These cases collectively show that performance in reliance upon an oral promise must be explainable only by existence of the promise. The performance must evidence the promise. *See generally* CORBIN § 430; *Statute of Frauds* §§ 406–08.

Here, Frantz's actions tend to evidence an employment relationship. But that is not the issue. The actions do not evidence, nor are they explainable only by, the particular agreement alleged in Frantz's complaint—a noncompetition covenant. The district judge so held. He noted that Frantz had failed to identify any actions, such as payment of extra consideration, referable to and evidencing the covenant. Frantz now argues that employment itself was sufficient consideration for a covenant. That is true, of course. *See Insurance Associates v. Hansen,* 111 Idaho 206, 723 P.2d 190 (Ct.App.1986). But the judge was not questioning the adequacy of consideration; he was searching for acts of reliance referable to the covenant. He could find none and neither can we.

We realize that the referability requirement has its limits. A plaintiff should not be put to the impossible burden of proving unique reliance upon every provision in an oral agreement. But the plaintiff must show reliance upon the agreement as alleged, to which the statute of frauds applies. *Statute of Frauds* § 407. This Frantz did not do. Accordingly, we are constrained to hold that Parke was not estopped to invoke the statute of frauds. We conclude that summary judgment was properly entered against Frantz's complaint for enforcement of the alleged oral covenant.[3]

II

We now consider whether Frantz has any claim in tort for damages caused by Parke's unwelcome competition. Frantz argues that the district judge erred in dismissing a paragraph in his complaint alleging unfair practices. He urges that Parke acted tortiously by using Frantz's patient lists and by soliciting his patients.

The RESTATEMENT (SECOND) OF TORTS (hereinafter *Second Restatement*), recognizes that intentional interference with existing or prospective contractual relations between another and a third party may create liability. *See* §§ 766, 766B. With respect to existing contracts, our Supreme Court has stated the prima facie elements of the cause of action to be "(a) the existence of a contract, (b) knowledge of the contract on the part of the defendant, (c) intentional interference causing a breach of the contract, and (d) injury to the plaintiff resulting from the breach." *Barlow v. International Harvester Co.,* 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974); *accord McEnroe v. Morgan,* 106 Idaho 326, 678 P.2d 595 (Ct.App.1984). Once the plaintiff has made out a prima facie case, the burden is on the defendant to prove justification. *Barlow v. International Harvester Co., supra.*

3. A closing comment by the district judge bears repeating here. "Frantz could have prevented any claimed injustice in this matter by insisting upon a written employment agreement with a covenant not to compete...."

A defendant is not entitled to interfere with an *existing* contractual relation simply because he is in competition with the plaintiff. However, the law does not wholly insulate professional and business people from competition in the market-place. There is a qualified privilege allowing competitors to interfere with *prospective* contracts. The *Second Restatement*, at § 768, provides:

> (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>
> (a) the relation concerns a matter involved in the competition between the actor and the other and
>
> (b) the actor does not employ wrongful means and
>
> (c) his action does not create or continue an unlawful restraint of trade and
>
> (d) his purpose is at least in part to advance his interest in competing with the other.
>
> (2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

Here, the record contains no showing that Parke interfered with any existing "contracts" between Frantz and his patients. With respect to intentional interference with prospective relations with patients, we deem it clear that Parke's conduct was privileged. Parke clearly went into competition with Frantz for patients in Sandpoint. His purpose in asking patients to visit his new office was to advance his position in the market. Although Frantz urges that Parke should not have solicited his patients and utilized his patient list, we cannot say that this conduct constituted such "wrongful means" as to defeat the competition privilege under § 768. There is no indication that Parke invaded records to which access was restricted, or that he solicited patients whom he had not previously treated. Accordingly, we uphold the dismissal of Frantz's tort claim.

The judgment of the district court is affirmed. Costs to respondent Parke. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.