(No. 6598. October 27, 1939.)

VERNA B. JONES, an Infant, Appearing by HARRY JONES, Her Guardian Ad Litem, Respondent, v. F. J. MIKESH, Appellant.

[95 Pac. (2d) 575.]

Paul S. Boyd, Chapman & Chapman and Lionel T. Campbell, for Appellant.

James R. Bothwell and Harry Povey, for Respondent.

MORGAN, J.—December 20, 1936, at about 10:30 o'clock P. M., respondent and a boy named Don Conyers were walking along the highway between Buhl and Hagerman when they were overtaken and struck by an auto truck driven by appellant, as a result of which respondent was seriously injured. The accident occurred at a curve in the road at the top of what is known as Banbury Grade. This action was commenced by respondent who was an infant and who

appeared by Harry Jones, her father, as her guardian *ad litem*. It is alleged in the complaint that plaintiff, observing the lights of the approaching truck, stepped into the borrow-pit on the easterly side of the highway and was standing in the borrow-pit approximately five feet from the outer edge of the oiled portion of the highway; that defendant, at said time and place, was driving and operating a Dodge pick-up truck in a northerly direction along the highway, with three other persons occupying the cab of the truck with him; that the defendant recklessly, carelessly and negligently drove the truck at a dangerous and excessive rate of speed along the highway and as a direct and proximate result of such negligence and carelessness, drove it off the oiled portion of the highway and into the borrow-pit on the easterly side thereof, striking plaintiff with the truck, hurling her a distance of approximately sixty feet and rendering her unconscious; that by reason of the negligent acts of defendant, as aforesaid, plaintiff suffered a compound, comminuted fracture of the left tibia and fibula and also cuts and bruises. Ambulance, hospital and medical and surgical expenses were alleged; also, "that as a result of said injuries the plaintiff will be permanently injured and damaged in the use of her left limb, all to plaintiff's damage in the sum of $10,000.00."

For a second cause of action plaintiff adopted the allegations of her first cause of action and alleged:

"that said defendant at said time and place, while so intoxicated as to be unable to properly operate and manage said truck, was driving and operating a Dodge pick-up truck in a northerly direction along said highway with three other persons occupying the cab of said truck besides said defendant; that said defendant at said time and place and while so intoxicated, recklessly, carelessly and negligently drove said truck at a dangerous and excessive rate of speed along said highway and as a direct and proximate result of such negligence and carelessness, drove said truck off the oiled portion of said highway and into the borrow pit on the easterly side of said highway, striking said plaintiff with said truck, hurling her a distance of approximately sixty feet and rendering her unconscious, all to plaintiff's damage and injury."

Defendant answered the complaint and cross-complained for damages to his truck. The case was tried to a jury which returned a verdict in plaintiff's favor for $2,000. Judgment was entered accordingly and a motion for a new trial was made and denied. This appeal is from the judgment and from the order denying a new trial.

■■ ■ The evidence as to appellant's negligence and as to his intoxication at the time of the accident is conflicting and that produced by and on behalf of respondent, if uncontradicted, is sufficient to sustain the verdict and judgment. A verdict will not be disturbed on appeal, because of conflict, if the evidence supporting it would be sufficient to sustain it if uncontradicted. (*Harp v. Stonebraker,* 57 Ida. 434, 438, 65 Pac. (2d) 766, 768.)

■■ Appellant assigns as error the failure of the trial judge to define the term *"prima facie,"* as used in the instructions in connection with the words "negligence" and "unlawful." The assignments of error raising this point seem to be based on the fact that certain instructions were given with respect to acts which were *prima facie* negligent, or *prima facie* unlawful, and the definition of *"prima facie"* does not occur in those instructions. Instruction No. 12 is:

"The court instructs you, gentlemen, that the term *'prima facie'* means: At first sight; on the first appearance; on the face of it; so far as can be judged from the first disclosure; presumably."

In instruction No. 22, the jury was told:

"The court has not attempted to embody all the law in this case in any one instruction. In considering any single instruction you must consider it in connection with all other instructions and construe them in harmony with each other. You are not at liberty to single out a particular instruction and base your verdict upon it alone."

■ Instruction No. 12, having fully and correctly defined and explained the meaning of *"prima facie,"* it was not necessary for the court to repeat the definition and explanation in each instruction wherein the term was used.

■ Appellant complains of the action of the court in instructing the jury to the effect that it is unlawful for any

person who is under the influence of intoxicating liquor to drive any vehicle upon any highway within this state (I. C. A., sec. 48–502.) He contends that by its instruction the court submitted to the jury a matter which was not within the issues framed by the pleadings. This contention is based on the fact that in the complaint it was alleged the defendant drove the truck while so intoxicated as to be unable to properly operate and manage it.

"Intoxicated" and "under the influence of intoxicating liquor" are understood to mean the same, in this country. See "intoxicated," Webster's New International Dictionary, second edition; *Packard v. O'Neil,* 45 Ida. 427, 262 Pac. 881, 56 A. L. R. 317. In common use in Idaho these terms are synonymous and interchangeable and the instruction could not have misled the jury into deciding an issue not presented by the complaint.

Appellant complains of instruction No. 16, as being contradictory and conflicting. It is:

"The court instructs the jury that neither a pedestrian nor an automobile has a superior right to any part of a public highway in the State of Idaho. Each with respect to the other in the use of the highway is entitled to equality of right, the duties of both are reciprocal; however, while the duty of exercising reasonable care for their own safety and the safety of others is imposed alike on both the pedestrian and the driver, the automobile being a dangerous instrumentality capable of inflicting fatal injuries, the comparative safety of its driver in case of a collision with a pedestrian is to be taken into consideration in measuring the duty of a driver."

The instruction is not contradictory nor conflicting. While the rights of a pedestrian and the driver of an automobile to the use of a public highway are equal, and their duties to each other are reciprocal, the one having the greater power to do injury owes to the other a comparatively greater duty to exercise care in the use of that power. The instruction is approved.

Appellant assigns as error the court's refusal to give to the jury his requested instruction No. 10, as follows:

"The court instructs the jury that if you should find for the plaintiff in this case, that in assessing her damages, you will not be permitted to consider the element of permanent injury for the reason that there is no evidence to the effect that plaintiff has suffered permanent injuries."

He also complains that the court submitted the issue as to permanent injuries, in giving instruction No. 1. That instruction merely stated the issues framed by the pleadings, including the claim for damages for permanent injuries, and instruction No. 2 is:

"You will understand, gentlemen, that the foregoing instruction is not intended by the court to be considered by you as a statement of the evidence in the case, but simply sets out the claims made by the respective parties to the action by their pleadings."

A party litigant has a right to have issues presented by his pleadings, when supported by any competent evidence, submitted to the jury by proper instructions. (*Packard v. O'Neil, supra.*)

While respondent's physician, Dr. Charles Beymer, presented by her as a witness, testified at the trial that it was impossible for him to estimate, at that time, the amount of permanent injury, if any, which would result from the accident, he further testified:

"Q. Assuming that the best results may be obtained in the future, doctor, would there in your opinion be any percentage of permanent injury?

"A. I can't say whether there would be over ten per cent. in any condition there."

The evidence introduced by and on behalf of respondent further shows that, as a result of the accident, she suffered a compound, comminuted fracture of the tibia and fibula; that she remained in the hospital from December 20, 1936, to April 13, 1937; that she was forced to use crutches until August or September thereafter; that at the time of the trial she was still lame, had a discharging sore on her heel, and when she stood on her feet two and a half or three hours at a time her leg would swell and become painful.

There was enough evidence of permanent injury to justify the refusal to give appellant's requested instruction No. 10.

The judgment and order appealed from are affirmed. Costs are awarded to respondent.

Ailshie, C. J., and Budge, J., concur.

GIVENS, J., Concurring.—In addition to the testimony referred to (as to permanent injury) in the majority opinion and by Judge Holden in his special concurrence and dissent, Mrs. Jones, mother of plaintiff, testified:

"Q. How does the injury affect your daughter at the present time, Mrs. Jones?"

. . . . . . . . . . . . . .

"A. She can't stand up and do any work more than two hours or two and one-half hours in the daytime, or if she stands up more than that her ankle swells to the extent that it is painful and she has to lie down or sit down until the pain leaves it; about two hours or two hours and a half is the most she can stand up to do anything, to do work."

"Q. Do you notice any difference in her nervous system, Mrs. Jones, since this accident?"

. . . . . . . . . . . . . .

"A. She was more nervous than she was before the accident since she has had the accident she is more nervous more or less ever since."

The injury occurred December 20, 1936, the trial was March 14, 1938, one year and almost 4 months after the injury. The requested instruction stated that "there was no evidence to the effect that plaintiff has suffered permanent injuries." If there was any substantial evidence to that effect the instruction was properly refused.

It seems to me that on the testimony of Dr. Beymer, Miss Jones' testimony as to her own pain and suffering and her mother's testimony as to the extent of her injuries existent at the time of the trial, clearly justified the court in refusing the requested instruction and it was for the jury not the court to determine the question of permanent injuries—which they might have considered from the doctor's testimony—amounted to not exceeding 10 per cent; also there was no prejudice because $781.40 of the verdict was for actual expenses, leaving

only $1,218.60 as damages for pain, suffering, a comminuted compound fracture of the left leg, incapacity up to the time of the trial and continued debility at that time, certainly not excessive for the mere injury even if the deleterious results thereof continued only up to the time of trial. (See annotations in 102 A. L. R. 1393 and 46 A. L. R. 1346.)

Therefore I concur with Morgan, J.

Ailshie, C. J., joins in this concurrence.

HOLDEN, J., Concurring in Part and Dissenting in Part. —Dr. Charles Beymer, called by respondent on the question of the injuries alleged to have been sustained, testified:

"Q. And what in your opinion, or for how long, in your opinion, would you expect that to continue, Doctor?

"A. That is impossible to say.

"Q. What did you mean Doctor, when you said it was impossible to say how long her present condition may continue?

"A. Well, you have several factors there, when you say it's impossible to tell; one is the ulceration which you had on the heel; the other is the accommodation of the body and the axis to the difference in alignment of your bone and the weight carried. I don't know how you're going to evaluate your length of time there that this might continue.

"Q. Do injuries of this kind continue throughout life, Doctor?

"A. No, not necessarily.

"Q. I will ask you in your opinion whether you consider the plaintiff has sustained a permanent injury on account of this accident?

"A. I don't think you can answer that question yes or no at this time.

"Q. As I understand it now, Doctor, you can't say whether or not there is or is not permanent injury suffered by this plaintiff?

"A. You cannot say."

Appellant requested and the court refused to give the following instruction:

"The court instructs the jury that if you should find for the plaintiff in this case, that in assessing her damages you will not be permitted to consider the element of permanent injury for the reason that there is no evidence to the effect that plaintiff has suffered permanent injuries."

Respondent alleged she suffered a permanent injury "in the use of her left limb." The burden was upon her to prove that element of damage. It is clear from the above-quoted testimony, by which she is bound, respondent not only failed to prove permanent injury by a preponderance of the evidence, but, on the contrary, proved it could not be determined her injuries were permanent, at the time of the trial. Hence it was error to refuse to give the requested instruction. Other than that, I concur in the majority opinion.