803 P.2d 518

**Lila BURTON, Plaintiff-Respondent,**

v.

**ATOMIC WORKERS FEDERAL CREDIT UNION, Defendant-Appellant.**

**No. 17940.**

Supreme Court of Idaho,
Twin Falls, March 1990 Term.

Dec. 14, 1990.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendant-appellant. William D. Olson, argued.

E. Lee Schlender, Hailey, for plaintiff-respondent.

BAKES, Chief Justice.

This is a wrongful termination of employment case in which the jury awarded damages to a discharged employee, plaintiff-respondent Lila Burton, from her former employer, defendant-appellant Atomic Workers Federal Credit Union (the Credit Union), for (1) breach of an employment contract ($68,000) and (2) breach of an implied covenant of good faith and fair dealing ($40,000).

I

Lila Burton worked for the Credit Union from May 1, 1966, until she was discharged on July 11, 1985. Prior to her discharge, Burton served the last approximately ten years as executive secretary to the Credit Union's manager, Daryl Tanner. On June 11, 1985, one month before her discharge,

Burton was demoted by Ron Johnson, Tanner's successor, from executive secretary to the manager to receptionist. On July 11, 1985, her employment was terminated.

Burton alleges the July 11, 1985, discharge violated an employment contract, express or implied, with the Credit Union because it was against seniority practices and contrary to representations made to her that she would not be terminated without "just cause" before she reached the age of retirement, age 65. Burton also alleges she was terminated due to bad faith personally directed at her by the chairman of the Credit Union's board of directors, which was also a violation of an implied covenant of good faith and fair dealing.

The Credit Union denied that Burton was anything other than an at-will employee. Furthermore, the Credit Union denied that the chairman had fired Burton because of personal animosity; rather, Burton was validly discharged along with three other employees in a reduction in force caused by an economic recession. The Credit Union also cited Burton's alleged poor work performance. Prior to trial, the district court denied the Credit Union's motion for summary judgment. The trial court also denied the Credit Union's motion for a directed verdict on the evidence presented at trial.

In its special verdict the jury found (1) that an express or implied employment contract existed between the parties which specified the duration of Burton's employment or limited the reasons for which she could be terminated, (2) that the Credit Union was estopped from asserting a contract of at-will employment, (3) that the Credit Union breached the employment contract causing damages of $68,000, and (4) that the Credit Union breached an implied covenant of good faith and fair dealing causing damages of $40,000. Subsequently, this judgment was reduced by the amount of unemployment compensation received by Burton and an amended judgment was entered for a total of $104,-952.06. The trial court denied the Credit Union's motions for *j.n.o.v.* and new trial and awarded costs to Burton.

The Credit Union appeals asserting that the trial court committed several instructional and evidentiary errors in the course of the trial. Further, based upon this Court's recent decision in *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744 (1989), the appellant alleges that the trial court erroneously submitted to the jury both a tort theory and a contract theory for breach of an implied covenant of good faith and fair dealing. Appellant also raised certain other evidentiary issues. Since we agree that there were several errors committed in this trial, we reverse and remand for further proceedings as hereinafter set forth.

II

Appellant contends that the trial court committed reversible error in its instructions and special verdict by failing to submit the defendant's statute of frauds defense theory to the jury, and by improperly submitting certain of plaintiff's issues and theories which should not have been submitted to the jury. Further, the appellant contends that the trial court committed error by permitting the plaintiff to read an affidavit containing hearsay to the jury, by refusing to permit a defense witness to testify, and by denying the defendant's change of venue claim.

Our analysis of the alleged errors committed at trial begins with a review of plaintiff's claims in this case. Burton alleged at trial that an express or implied contract between the parties existed based on oral representations, the employee personnel manual, and the actual course of conduct of the Credit Union. It was alleged that the employment contract modified Burton's status from an at-will employment, *i.e.*, one which could be terminated without cause at any time, to a contract of employment from which Burton could not be dismissed prior to the age of retirement, age 65, unless she was terminated for just cause. Burton presented testimony consisting of oral representations, the practices and procedures of the Credit Union, and an employment manual prepared by the employer. From this evidence Bur-

ton asserts that there was a contract that she could not be terminated until the age of retirement, age 65, without just cause.[1] The Credit Union allegedly breached this contract by terminating Burton without cause before she reached the age of retirement. Burton alleged that the measure of damages stemming from this breach was $107,417.98 in lost wages which she would have earned between the time she was fired and the time she would have retired at age 65.

The Credit Union disputed each of these allegations and presented evidence at trial that Burton was an at-will employee, and that she was discharged for cause (economic necessity and poor work performance), and that in any event Burton was not damaged to the extent that she alleged. Burton presented evidence at trial tending to contradict the Credit Union's assertion that there was just cause for her dismissal.

In its special verdict regarding the breach of contract claim, the jury found that the Credit Union was estopped to assert that the employment was at-will and that an express or implied employment contract existed between Burton and the Credit Union which specified the duration of Burton's employment or limited the reasons for which she could be terminated. On appeal, the Credit Union asserts, with regard to Burton's breach of contract claim, that the trial court committed various errors in (1) giving the jury instructions and special verdict on the contract, (2) denying its motions for directed verdict and *j.n.o.v.* based on its statute of frauds defense, (3) failing to give numerous defense instructions, (4) denying its motion for new trial, and (5) ruling on several evidentiary issues and the change of venue issue.

**A.**

At trial, the Credit Union argued that the claimed oral contract for employment until age 65 violated the statute of frauds, and it requested instructions on the statute of frauds. The trial court rejected these instructions, based upon an erroneous interpretation of the statute. I.C. § 9–505 reads in pertinent part:

> **9–505. Certain agreements to be in writing.** In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:
>
> 1. An agreement that by its terms is not to be performed within a year from the making thereof.
>
> . . . .

The trial court rejected the Credit Union's statute of frauds theory because:

> This Court believes that a—if, in fact, an oral contract was reached between the parties here, the statute of frauds does not apply due to the simple fact that an employment contract is not capable of being completed within one year. It wouldn't make any sense to me to have the statute of frauds apply to that because most employment contracts, they're not completed within one year. So I don't believe the statute of frauds, you know, the code section, the intent of the legislature would have been to have that apply to employment contracts, which, by their very nature, would be in excess of one year.....

However, an agreement, which by its terms cannot be performed within one year, is invalid under I.C. § 9–505 unless "some note or memorandum thereof, be in

---

**1.** While an employment manual may modify the terms of employment, *see Harkness v. City of Burley,* 110 Idaho 353, 715 P.2d 1283 (1986), we find nothing in the employment manual in this case which supports an assertion that it modifies or limits the employer's right to discharge at will. In fact, the manual makes no reference to the nature of the employment, whether at-will or otherwise. The manual was drafted by a prior office manager and is basically unsophis-

ticated. It does not indicate one way or the other whether Burton's employment relationship with the Credit Union was at-will or whether the employer's right to discharge had been contractually limited. The manual basically serves the purpose of conveying some information to the Credit Union employees concerning their employment, but does not directly or indirectly address the nature of the employment relationship.

writing and subscribed by the party to be charged...." *Id.* Here the alleged oral contract to employ Burton until she was age 65 could not by its terms have been performed within one year. *Allen v. Moyle,* 84 Idaho 18, 23, 367 P.2d 579, 582 (1961) ("The rule is firmly established by the great weight of authority that a contract for personal services which by its terms are to be rendered for a period in excess of one year is within the meaning of the statutory provision requiring contracts not to be performed within a year to be in writing."). *Cf. Whitlock v. Haney Seed Co.,* 110 Idaho 347, 715 P.2d 1017 (Ct.App. 1986). Accordingly, the trial court should have instructed the jury on the Credit Union's statute of frauds defense. *Garrett Freightlines v. Bannock Paving Co.,* 112 Idaho 722, 730–731, 735 P.2d 1033, 1041–1042 (1987) ("Litigants have a right to have the jury instructed on every reasonable theory presenting a basis of a claim or relief, or defense thereto, where such theory finds support in the pleadings and evidence."); *Messmer v. Ker,* 96 Idaho 75, 524 P.2d 536 (1974); *Rosenberg v. Toetly,* 94 Idaho 413, 489 P.2d 446 (1971); *Hodge v. Borden,* 91 Idaho 125, 417 P.2d 75 (1966); *Domingo v. Phillips,* 87 Idaho 55, 390 P.2d 297 (1964); *Jones v. Mikesh,* 60 Idaho 680, 95 P.2d 575 (1939). The trial court erred in failing to instruct the jury on the Credit Union's theory of the statute of frauds as reflected in Defendant's Requested Instructions 21 and 22. Burton argues that since the employee might die within the one-year period, even though the oral agreement is for a longer period, then the statute of frauds is not applicable. However, as the Court of Appeals held in *Frantz v. Parke,* 111 Idaho 1005, 1008, 729 P.2d 1068, 1071 (Ct.App.1986), "[W]e subscribe to the majority view and hold that possible termination by death does not remove the five-year covenant in this case from the statute of frauds."

Burton further argued to the trial court that the statute of frauds did not apply to this case because Burton had partially performed the contract, *i.e.,* she worked at the Credit Union. However, in *Allen v. Moyle,* 84 Idaho 18, 367 P.2d 579 (1961), we rejected this argument.

> [T]he equitable doctrine of part performance is not applicable to a contract ... within the statute of frauds.... The mere part performance of such a contract does not take it out of the operation of the statute or permit a recovery under the contract for any part of the contract remaining executory.... [T]o hold that part performance is performance would be a nullification of the statute.

84 Idaho at 23, 367 P.2d at 582 (*quoting* 49 AM.JUR. § 497, at 798); *Frantz v. Parke,* 111 Idaho 1005, 1009, 729 P.2d 1068, 1072 (1986); *see also,* FARNSWORTH, CONTRACTS § 6.9, at 424 (1982). The trial court erred in refusing to instruct on the statute of frauds as requested in the Defendant's Instructions 21 and 22. *Hodge v. Borden, supra; Allen v. Moyle,* 84 Idaho 18, 367 P.2d 579 (1961); *Garrett Freightlines v. Bannock Paving Co.,* 112 Idaho 722, 735 P.2d 1033 (1987).

### B.

Appellant also assigns as error the trial court's submission of the issue of equitable estoppel to the jury in the special interrogatories, without instructing the jury on the definition and elements required to establish equitable estoppel. The issue of equitable estoppel, though not raised in the pleadings or the pretrial order, did come up as the trial progressed. However, it was not raised by Burton as a means to bar the Credit Union's claim that the oral contract was barred by the statute of frauds. Rather, it was presented by Burton as an alternative theory of contractual recovery should the jury find that an express or implied contract for employment did not exist. The way the issue was presented is reflected in the first two questions of the special verdict which read as follows:

> QUESTION NO. 1: Was there an express or implied employment contract between the parties which specified the duration of the plaintiff's employment or limited the reasons for which she could be terminated?
>
> ANSWER: Yes _X_ No___

QUESTION NO. 2: Did the plaintiff rely on conduct of the defendant which estopped the defendant from asserting a contract of at-will employment?

ANSWER: Yes _X_ No___

The jury was then instructed that "[i]f you answered 'No' to both questions [No. 1 and No. 2] in this section, then you are to answer no further questions with respect to breach of contract. If you answered 'Yes' to either Question No. 1 or Question No. 2, then you are to answer Question No. 3 in the next section. In either event you shall answer Question No. 4."

While the jury found that the defendant was estopped from asserting a contract of at-will employment, no question was ever submitted to the jury in the special verdict asking whether the Credit Union was estopped from asserting the statute of frauds, no doubt because the trial court refused to instruct on the issue of the statute of frauds. Nor was the jury instructed concerning the elements of equitable estoppel, although such an instruction was requested.

■ The elements of equitable estoppel are set forth in *Tew v. Manwaring*, 94 Idaho 50, 480 P.2d 896 (1971):

[A]s related to the party estopped [the essential elements of equitable estoppel] are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming estoppel, [the essential elements of estoppel] are: (1) Lack of knowledge and of means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped;

and (3) action based thereon of such a character as to change his position prejudicially.

94 Idaho at 53, 480 P.2d at 899; *Frantz v. Parke*, 111 Idaho 1005, 1010, 729 P.2d 1068, 1073 (1986); *Charpentier v. Welch*, 74 Idaho 242, 248, 259 P.2d 814, 817–818 (1953). The failure of the trial court to instruct the jury on the requirements of equitable estoppel when that issue was submitted to the jury in special verdict interrogatory No. 2 constitutes reversible error. *Robertson v. Richards*, 115 Idaho 628, 769 P.2d 505 (1989). In the *Robertson* case, this Court held that it was reversible error for a trial court to fail to instruct the jury on the elements of proximate cause, even though neither party objected at trial to the court's inadvertent failure to give that instruction to the jury. The failure to instruct on the elements of equitable estoppel in this case, like the failure to instruct on proximate cause in the *Robertson* case, requires the verdict and judgment to be set aside and a new trial granted. We further note that, like *Robertson v. Richards*, the trial court in this case also failed to give a proximate cause instruction.[2]

### C.

Since we are remanding for a new trial we now consider other assignments of error by the Credit Union.

■ 1. The Credit Union alleges that the trial court erred in failing to grant its motion for directed verdict and *j.n.o.v.* on several grounds, one of which was that the alleged contract to employ Burton until she reached the age of retirement, age 65, which Burton testified to, was as a matter of law within the statute of frauds, and therefore the trial court should have granted the Credit Union's motion for directed verdict and judgment notwithstanding the verdict. The Credit Union relies upon *Allen v. Moyle*, 84 Idaho 18, 23, 367 P.2d 579,

---

**2.** The trial court in giving Instructions Nos. 7 and 20 submitted Burton's theory of breach of covenant of good faith and fair dealing to the jury, instructing the jury to give "all damages *proximately caused* by such breach," including "impairment of her reputation, personal humili-

ation, and mental anguish and suffering." However, the trial court in this case failed to give an instruction on the definition and elements of "proximate cause," which this Court, in *Robertson v. Richards, supra,* held to be reversible error.

582 (1961), which held that, "The rule is firmly established by the great weight of authority that a contract for personal services which by its terms are to be rendered for a period in excess of one year is within the meaning of the statutory provision requiring contracts not to be performed within a year to be in writing." We would be inclined to agree with appellant that the trial court erred in failing to grant the Credit Union's motion for directed verdict and motion for *j.n.o.v.* on the statute of frauds issue, except for the issue of equitable estoppel. A party may be equitably estopped from asserting the statute of frauds. *Frantz v. Parke,* 111 Idaho 1005, 729 P.2d 1068 (1986). Since the jury found an estoppel in the case, albeit they were not instructed on what the elements of estoppel were, and the finding was directed at whether the Credit Union was estopped from asserting an at-will employment rather than estopped from asserting the statute of frauds, we nevertheless conclude that there may be a triable issue of fact over whether the Credit Union is estopped from asserting a statute of frauds, and therefore that issue should be reevaluated on remand. *Frantz v. Parke, supra.*

■ 2. The Credit Union alleges that the trial court erred in allowing the plaintiff, Burton, to read her pretrial affidavit to the jury in its entirety. The Credit Union had used portions of the affidavit in cross examination. The trial court permitted Burton's counsel to read the entire affidavit. Burton's affidavit consisted of a series of self-serving statements, some of which were inadmissible hearsay. The portions containing inadmissible hearsay should not have been allowed to be read into evidence. The prejudicial effect of the inadmissible hearsay and self-serving nature of much of the document far outweigh any benefits to be gained from allowing the document to be viewed by the jury in its entirety. On retrial, the trial court should not admit the affidavit in its entirety.

3. Next, the Credit Union asserts error in the trial court's refusal to allow the testimony of a witness because his name was not listed as a potential witness on the trial court's pretrial order. Because this matter is being remanded for a new trial, we need not address that issue since the name may be listed on any future pretrial order list.

4. We next consider the Credit Union's claim that the trial court erred in refusing to change venue of the action from Bannock County, where it was filed, to Bonneville County. The Credit Union, in its answer to the plaintiff's complaint, asserted that under I.C. § 5–404 Bannock County was an improper venue for the action because the defendant corporation's principal place of business, and the county in which the cause of action arose, both were in Bonneville County. The trial court concluded that the Credit Union's right to raise the venue change issue had been waived because, although raised in the answer filed early in the case, the issue was not noticed up for hearing until 21 days before trial. The Credit Union argues, however, that under I.R.C.P. 12(b) the issue of venue is appropriately raised in the answer to the complaint, and therefore was not waived.[3] No Idaho case has been cited in the briefs which holds that the claim of improper venue, if properly raised in an answer, can *no longer be asserted because* of failure to call the claim to the trial court's attention until shortly before trial. We need not resolve this issue, however, since the case is being reversed for a new trial. On remand the trial court shall consider the improper venue claim. I.R.C.P. 40(e).

---

**3. Rule 12(b). How defenses and objections presented.**—Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses *may at the option of the pleader* be made by motion: ... (3) improper venue, which motion shall state the grounds therefore and be considered as a motion for proper venue, but need not be accompanied by an affidavit,.... A *motion making any of these* defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleadings or motion..... (Emphasis added.)

### D.

■ Finally, we address that portion of the trial court's judgment which was based on plaintiff's tort and contract claims for breach of an implied covenant of good faith and fair dealing. Recently, in *Metcalf v. Intermountain Gas Company*, 116 Idaho 622, 778 P.2d 744 (1989), this Court adopted for the first time such a covenant in employment relationships. While stating that, "Until today, this Court has not recognized an implied-in-law covenant of good faith and fair dealing in employment contracts," the Court nevertheless concluded that today "we should adopt an implied-in-law covenant of good faith and fair dealing (the covenant) as hereinafter outlined." 116 Idaho at 625, 626, 778 P.2d at 747, 748. Thereafter, this Court described that covenant as a covenant in contract, not in tort, the breach of which is a "breach of the employment contract, and is not a tort." 116 Idaho at 626, 778 P.2d at 748. Additionally, the lead opinion stated that since "our decision is a departure from prior law ... [the decision] will only be applied prospectively to breaches or violations of the covenant occurring after the effective date of this opinion [August 8, 1989]...." 116 Idaho at 628, 778 P.2d at 750. However, the portion of the opinion dealing with the prospective application of the newly created implied covenant in *Metcalf* was only joined by two justices. In our recent decision of *Sorensen v. Comm Tek, Inc.*, 799 P.2d 70 (1990), this Court noted that the conclusion that the *Metcalf* opinion should only be applied prospectively was only joined in by two justices and held that, "A majority of this Court now concludes that the *Metcalf* opinion should be applied to all cases which had been filed at the time that the *Metcalf* opinion was issued on August 8, 1989." In this case, the Credit Union's action had been filed and was pending on appeal when *Metcalf* was released.

Accordingly, we conclude that the defendant appellant Credit Union is not precluded from relying on our decision in *Metcalf v. Intermountain Gas Co., supra*, in arguing that the judgment of the trial court should be reversed because the trial court submitted to the jury both a contract and a tort cause of action based upon a theory of implied covenant of good faith and fair dealing, which is contrary to our decision in *Metcalf*.

The judgment of the district court is reversed. Costs to appellant.

JOHNSON and McDEVITT, JJ., and MEEHL, J. pro tem., concur.

BISTLINE, Justice, dissenting.

The majority's indifference to readily available Idaho case precedent dealing with the statute of frauds defense is somewhat of a puzzlement. If it be that the Court's opinion does err in its application of the language of I.C. § 9–505(1), presumably so where prior case law is ignored, we are once again thereby rendering a disservice to the bench and bar. The resultant confusion as to what is the law causes this case to fall in line with *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 663 P.2d 287 (1983), a landmark case which eroded the doctrine of *res judicata*, as it had previously existed.

Far better that prior precedent should this day be explicitly rejected or reaffirmed. To simply ignore prior precedent muddles the law. Accordingly, it behooves the Court to provide the reasoning which explains to Lila Burton how it is that she is stripped of the jury's verdict in her favor.

Idaho Code § 9–505 states:

9–505. **Certain agreements to be in writing.**—In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:

1. An agreement that by its terms is not to be performed within a year from the making thereof.

Idaho case law since long ago created an exception to I.C. § 9–505(1) by this Court's holding that, if a contingency may occur, which will in less than one year terminate a contract for indefinite employment, such employment contract is not subject to the

statute of frauds. In the case before us, the Credit Union's ability to terminate Burton's employment for just cause, plus Lila Burton's right to quit created two such contingencies, either of which might have occurred within one year.

Such meanderings do not originate with me. In *Darknell v. Coeur D'Alene Transp. Co.*, 18 Idaho 61, 108 P. 536 (1910), the Court discussed an employment contract which provided for Darknell's termination if he sold his stock in the company. The Court said: "By a long line of authorities it is held that such a contract as this does not fall within the statute of frauds, for the reason that it was capable of being performed, and *might have been* fully performed and terminated, within a year, and that such contracts are not within the statute." *Id.*, 18 Idaho at 69, 108 P. at 539 (emphasis supplied). Thus, it is seen that the contingency need not have actually occurred; that it might and conceivably could occur is enough.

A later Idaho case had a similar holding. In *Hubbard v. Ball*, 59 Idaho 78, 81 P.2d 73 (1938), Hubbard claimed that he had been promised compensation by Mr. White in return for certain care to be rendered, and services attendant to White's business, all promised for the duration of White's life. Upon White's death, Hubbard submitted a thousand dollars creditor's claim to Ball, who was executrix of the estate. Ball resisted payment and invoked the statute of frauds. Hubbard prevailed in full. Because White's death could have happened at any time after Hubbard commenced performance of the contract, the Court held that: "[W]here the termination of a contract is dependent upon the happening of a contingency which may occur within a year it is not within the statute of frauds, although the contingency may not take place until after the expiration of a year." *Hubbard*, 59 Idaho at 82, 81 P.2d at 75. That holding was identical to the holding in *Seder v. Grand Lodge*, 35 Idaho 277, 206 P. 1052 (1922).

The majority opinion relies upon *Allen v. Moyle*, 84 Idaho 18, 367 P.2d 579 (1961), in advancing its hypothesis that the statute of frauds applies to employment contracts which call for the award of retirement benefits at age 65. *Allen* does discuss the requirement of a writing where a contract would not be performed within one year, but *not involved* there was an employment contract providing retirement as a pensioner at age 65. Involved was an oral agreement for a definite seven year term of employment; accordingly, the Court applied the statute. *Allen*, 84 Idaho at 23, 367 P.2d at 582. There is no doubting that an employment contract for a definite term of more than one year is subject to the statute of frauds. Unlike Allen, Lila Burton did not allege that her employment was for any specific term; hers was but an oral contract for employment—no term specified.

In *Whitlock v. Haney Seed Co.*, 110 Idaho 347, 715 P.2d 1017 (Ct.App.1986), our Court of Appeals recognized that while an employment contract for a definite term of years is subject to the statute of frauds, a word of mouth employment contract of indefinite duration is not. Like Burton, Whitlock was hired under an oral contract. After discussing the holdings in *Darknell* and *Hubbard, supra,* the Court remarked:

> If Whitlock's deposition were interpreted to mean that he was hired for a fixed period ..., then the fixed period would place his employment contract squarely within the statute of frauds.

*Whitlock*, 110 Idaho at 349, 715 P.2d at 1019 (citation to *Allen v. Moyle* omitted).

The majority chooses to entirely bypass the *Whitlock* case; instead it turns to another Court of Appeals opinion for the proposition that a term of years contract remains subject to the statute of frauds defense even though contract termination *may occur* within one year because of death. *See Frantz v. Parke*, 111 Idaho 1005, 729 P.2d 1068 (Ct.App.1986). *Frantz* is not controlling precedent on the application of the statute of frauds in this case because of the different treatment accorded contracts of employment for an indefinite term. Unlike the litigants in *Frantz*, Burton never understood or alleged that her contract was for a term of years. And,

unlike the litigants in *Frantz*, Burton was not subject to or brought suit concerning a covenant not to compete for a term of years.

The Credit Union's employee manual provided the basis for Burton's belief that she would be allowed to work until at least age 65. It was not just that the employee manual designated 65 as the age at which an employee would be eligible for retirement benefits, but such retirement benefits were an incentive to continue working at the Credit Union, at least until age 65.[4] Moreover, although it might have, the manual *did not mandate* retirement at age 65. Accordingly, Lila Burton was at liberty to retire at any time before *or after* age 65— but the fact is that she did not. What was at stake for Lila Burton if she left the Credit Union prior to age 65 was loss of retirement benefits. What was at stake for the Credit Union was the saving it could make by effecting her uncompensated discharge before she attained retirement age. No matter that; what counts is that an oral agreement providing for retirement benefits at 65 in no way, in and of itself, creates a term of years employment contract. Hence it is manifestly incorrect to assert that the statute of frauds applies to those employment contracts which allow for retirement benefits at age 65.[5]

Since 1910, the Idaho Supreme Court had been restricting the application of the statute of frauds to employment contracts. Employment contracts of indefinite duration have consistently been held to be excepted from the statute of frauds wherever it is possible that the contract can be performed within one year. This is so even though the *actual* duration of the contract for indefinite employment extends beyond that year.

Idaho has not been alone in so restricting the use of the statute of frauds. In 1954 the British Parliament repealed nearly all of England's statute of frauds. The English Law Reform Committee cited two reasons for repealing the statute: (1) the requirement of a writing is "out of accord with the way in which business is normally done;" and (2) the statute "promotes more frauds than it prevents." E. Allen Farnsworth, Contracts 371 (1982). Both of these reasons readily apply to the circumstances here present.

It is not and should not become the law that employees who intend to work until retirement must obtain written employment contracts whenever it is contemplated that the projected date for retirement will be more than one year from the making of the contract. This practice is "out of accord with the way in which business is normally done." Rather, it is common practice for an employer to hire employees with no fixed date for termination. It is also common practice to contract for employment verbally. Most employees are hired with the understanding that as long as they perform their duties well, and economic difficulties do not intervene, they can expect to remain employed until they choose to leave. As was the case here, it is normal for a business to reward faithful employees by offering them retirement benefits if they stay until age 65, or any other age at which such benefits are made payable. Because it is good business practice for an employer to set the age for retirement, an employer, by designating 65 as that age, is not creating a term of years employment contract. The employer may be seen as thus establishing sound policy aimed at promoting efficiency and fairness, but he is not obligated to remain in business, nor is an employee obliged to stay or precluded from dying.

There is no valid reason for the majority's attempt to expand the statute of

---

4. District and supreme court judges in Idaho, on taking office are aware of an incentive, by statute rather than an employee manual, to remain for four years, else there are *no* retirement benefits. It is recognized that such positions are not contractual. The only point of the analogy is to bring attention to the factor of the incentive which would keep an employee working for more years than if the employee did not see the carrot dangling from the Credit Union's stick.

5. Compare a former statutory provision, which was repealed, mandating judicial retirement at age 70. *See Boughton v. Price*, 70 Idaho 243, 215 P.2d 286 (1950).

frauds. Surely there is no thought of penalizing Lila Burton. More likely than that is it that the failure to consider case precedent is but a memory lapse as to law learned in law school, and a reluctance to admit error. If there are valid reasons for the attempt at making new law, now is the time to expose those reasons to public view. Not doing so can only result in casting doubt as to existing employment contracts and future contracts—all on the slender reed that the employee manual provides for retirement benefits at age 65. As noted earlier, criticism which the English Law Reform Committee leveled at the statute of frauds was that it "promotes more frauds than it prevents." Such an analysis is especially applicable to Lila Burton's circumstances. On the one hand she was enticed to stay on with the Credit Union until age 65 because she or anyone would understand that at that time retirement benefits were her entitlement. The Credit Union then invoked the statute of frauds as its defense to her claim based on an employment agreement. This is a prime example of the statute of frauds promoting fraud. The existence of an employment relationship is beyond dispute, and by mutual assent or consent it lasted 19 years. The only fraud here involved is found in the invoking of I.C. § 9–505(1). If the holding of this Court's opinion stands as written, from now until who knows when, employers are given license to use the statute of frauds defense as often as an unjustly discharged employee seeks judicial relief.

There is not to be found any precedent for such a holding. There is no precedent to support the expansion of the statute of frauds so as to apply to the employment as existed here, which was not just a day, a month, or a year, but for nineteen years of faithful service. With all due respect to the majority, its opinion compels this dissent, or, alternatively, this humble servant of the State is greatly in need of enlightenment in this particular area of law.

If the majority wishes to overrule such cases as *Whitlock v. Haney Seed Co.*, 110 Idaho 347, 715 P.2d 1017 (Ct.App.1986), then it should be done explicitly. As the Court of Appeals in *Whitlock* explained, after quoting a portion of I.C. § 9–505:

> This provision has been narrowly construed by our Supreme Court. The statute does not govern an oral contract that 'might have been fully performed and terminated, within a year....' *Darknell v. Coeur d'Alene & St. Joe Transportation Co.*, 18 Idaho 61, 69, 108 P. 536, 539 (1910). *See generally* RESTATEMENT (SECOND) CONTRACTS § 130, comment a (1981). Thus, even if a contract appears on its face to anticipate performance for more than one year, it may fall outside the statute if it is subject to a condition or contingency that could occur within a year, terminating further performance. *Hubbard v. Ball*, 59 Idaho 78, 81 P.2d 73 (1938); J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 19–20 (2d. 1977).

*Whitlock*, 110 Idaho at 348, 715 P.2d at 1018 (footnote omitted).

Let us consider the defendant's requested jury instructions, refusal of which was deemed error by this Court. Defendant's requested instruction 21 states:

### INSTRUCTION NO. 21

You are instructed that if the employment agreement relied on by Plaintiff Lila Burton was by its terms incapable of being performed within a year from the making thereof, such an agreement is voidable and unenforceable under the laws of the State of Idaho.

Section 9–505, Idaho Code.

R. 230. Defendant's requested instruction 22 states:

### INSTRUCTION NO. 22

You are instructed that a contract for personal services which by its terms are to be rendered for a period in excess of one year, is within the meaning of the Idaho statute of frauds provision requiring contracts not to be performed within a year to be in writing. Unless it is in writing, it is voidable and unenforceable. Therefore, if you find that the contract relied on by the Plaintiff Lila Burton in

this case is such an agreement, you must find in favor of the Defendant and against the Plaintiffs.

Section 9–505, Idaho Code.

*Allen v. Moyle,* 84 Idaho 18, 367 P.2d 579 (1961).

*Remlinger v. Dravo Corporation,* 94 Idaho 292, 486 P.2d 1005 (1971).

R. 231. Both of these instructions, according to the majority, should have been given to the jury. It is not in the least understood why this Court would want the jury misled by instructions that misstate the law, and also based on theories wholly unsupported by the facts of the case! As stated in *Bratton v. Slininger,* 93 Idaho 248, 251, 460 P.2d 383, 386 (1969), "[i]nstructions should not be given which are not based on evidence adduced at trial."

Defendant's requested instruction 21 is wrong as a matter of law because it does not specify that an agreement subject to the statute of frauds is oral, unsupported by a writing. In addition, such agreement must only, by a mere possibility, be terminable within a year for the statute of frauds *not* to apply. By omitting this information, this requested instruction is designed to mislead the jury, not instruct the jury.

Defendant's requested instruction 22 is improper as a matter of law because nowhere and in no way has Burton alleged that she had a contract for a term of years. Without a shred of evidence to suggest that Burton understood that both the contract was to last for more than one year, and that there was *no possibility* of termination of the contract without liability before one year had expired, the defendant's requested instruction 22 is simply unsupported by the facts.

The two cases relied upon by the defendant for instruction 22 are informative. *Allen v. Moyle,* a specific seven year employment contract case, was discussed earlier. *Remlinger v. Dravo Corp.,* held that the statute of frauds did apply because the employee's answers to interrogatories stated that the contract was for four or five years. The majority can point to no evidence in the record from either party that Burton could not possibly be relieved of her duties under the contract for employment within one year, because Burton understood that she was hired for no specific term. Therefore, the statute of frauds is inapplicable to this case.